IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CREIGHTON E. MILLER,            :      CONSOLIDATED UNDER
(Administrator for  Estate of :      MDL 875
Steve Oswald)                   :
                                :
        Plaintiff,              :
                                :
                                :
        v.                      :
                                :
                                :
A-C PRODUCT LIABILITY TRUST,    :
et al.,                         :
                                :      E.D. Pa. Civil Action No.
        Defendants.             :      2:11-cv-33109-ER

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        October 19, 2015

        This case was transferred in March 2011 from the
United State District Court for the Northern District of Ohio to
the United States District Court for the Eastern District of
Pennsylvania, where it became part of the consolidated asbestos
products liability multidistrict litigation (MDL 875). The case
was assigned to the Court's maritime docket ("MARDOC").

        Creighton E. Miller ("Plaintiff"), the Administrator
of the Estate of Steve Oswald, allege that Steve Oswald
("Decedent" or "Mr. Oswald") was exposed to asbestos while
working aboard various ships. Plaintiff asserts that Decedent
developed an asbestos-related illness as a result of his
exposure to asbestos aboard those ships.

For the reasons that follow, the Court will deny Defendants' motion.

## I.    BACKGROUND

On May 19, 1995, Mr. Oswald brought claims (now pursued by Plaintiff after the death of Mr. Oswald) against various defendants, including shipowners represented by Thompson Hine LLP ("Defendants" or the "Thompson Hine Shipowners"). On March 29, 1996, approximately ten months after the filing of his asbestos action, Mr. Oswald filed for bankruptcy under Chapter 7 of the bankruptcy code in the United States Bankruptcy Court for the Middle District of Florida. By way of Order dated May 2, 1996, Judge Charles Weiner[1] dismissed Mr. Oswald's asbestos claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2]

---

[1]    Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]    On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14,

Mr. Oswald was discharged from bankruptcy approximately two months later (on July 19, 1996), although the bankruptcy case was not closed at that time. The following year, on April 22, 1997, the bankruptcy trustee filed an application in the bankruptcy court to have Mr. Oswald's asbestos counsel (Alan Kellman of the Maritime Asbestosis Legal Clinic) approved as special counsel to the trustee; and the Bankruptcy Court approved that application on April 26, 1997.[3] (See ECF No. 79-2, Ex. 1 at 2 (entries Nos. 10 and 13).) The bankruptcy case was closed approximately three months later (on July 26, 1997). The bankruptcy case was thereafter reopened and again closed (for a second time) on March 17, 2008. On March 18, 2011 (approximately three years after the bankruptcy case was closed (the second time) and approximately sixteen years after Mr. Oswald first

---

1997, Judge Weiner applied that dismissal order to all future MARDOC cases that had not yet been filed. In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

[3]     The "Maritime Asbestosis Legal Clinic" became the "Jaques Admiralty Law Firm, P.C." Plaintiff's current asbestos counsel of record includes, inter alia, Robert E. Swickle and Donald A. Krispin of the Jaques Admiralty Law Firm, P.C. (two of Mr. Kellman's eight partners at that firm).

filed his asbestos action), the MDL Court reinstated Mr.
Oswald's asbestos action, which had been dismissed by Judge
Weiner in 1996. A summary of this timeline of events is as
follows:

- May 19, 1995 – Asbestos action filed
- March 29, 1996 – Bankruptcy action filed
- May 2, 1996 – Asbestos action administratively dismissed
- July 19, 1996 – Mr. Oswald discharged from bankruptcy
- April 22, 1997 – Bankruptcy trustee moved to add Mr. Oswald's asbestos counsel as special counsel to bankruptcy trustee
- April 26, 1997 – Asbestos counsel approved as special counsel in the bankruptcy action
- July 26, 1997 – Bankruptcy action closed (first closure)
- March 17, 2008 – Bankruptcy action closed (second closure)
- March 18, 2011 – Asbestos action reinstated by MDL Court

The Thompson Hine Shipowners have moved for summary
judgment, arguing that (1) Plaintiff's claims are barred by way
of judicial estoppel because Mr. Oswald failed to disclose the
asbestos action as an asset in his bankruptcy filing, and (2)
Plaintiff cannot pursue the asbestos action because it is now
owned by the bankruptcy estate.

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there

4

is a genuine issue of material fact." <u>Am. Eagle Outfitters v.
Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)).
A fact is "material" if proof of its existence or non-existence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at
248.

In undertaking this analysis, the court views the
facts in the light most favorable to the non-moving party.
"After making all reasonable inferences in the nonmoving party's
favor, there is a genuine issue of material fact if a reasonable
jury could find for the nonmoving party." <u>Pignataro v. Port
Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing
<u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir.
1997)). While the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, meeting
this obligation shifts the burden to the non-moving party who
must "set forth specific facts showing that there is a genuine
issue for trial." <u>Anderson</u>, 477 U.S. at 250.

B.   <u>The Applicable Law</u>

The parties appear to assume that Defendants' legal
arguments regarding "judicial estoppel" and the "real party in

interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).[4] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362–63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

   A.   Judicial Estoppel

        Defendants contend that Plaintiff's claims are barred on grounds of judicial estoppel. Specifically, they contend that Mr. Oswald took irreconcilably inconsistent positions in his bankruptcy proceeding and the instant proceeding. Defendants state that Mr. Oswald concealed the existence of his asbestos claims when filing for bankruptcy by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current asbestos action (which was filed only two months after the

---

[4]        "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

filing of the bankruptcy action). They further assert that a finding of bad faith is warranted because Mr. Oswald had knowledge of the asbestos claims at the time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors – a motive Defendants assert is common to nearly all debtors in bankruptcy). Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the asbestos claims is necessary to (1) keep Plaintiff from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiff contends that the asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiff contends that Mr. Oswald did not take inconsistent positions between his bankruptcy filing and the present asbestos action because at the time of his bankruptcy filing – and throughout the entire duration of that action – his asbestos claims were dismissed, such that he was not required to list them as an asset in his bankruptcy action. Moreover, Plaintiff argues that even if Mr. Oswald should have identified the asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiff asserts that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Oswald acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiff asserts that bad faith cannot be proven in light of the fact that the claims were dismissed at the time he filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

B.  Real Party in Interest/Standing

In the alternative, Defendants contend that Plaintiff has no right to pursue the claims because the claims no longer belong to Plaintiff and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Oswald did not report the asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that because Mr. Oswald did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Mr. Oswald through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that,

even though the bankruptcy action has closed, the rights to the asbestos claims did not revert back to Mr. Oswald upon that closure and instead remain with the trustee, such that Plaintiff may not now pursue them.[5]

Plaintiff asserts that, because the asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Mr. Oswald disclosed them. In short, Plaintiff argues that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal

---

[5]     Defendants also assert that Plaintiff may only pursue claims held by Mr. Oswald at the time of his death and that, because the claims belonged to the bankruptcy trustee at the time of Mr. Oswald's death, there is no way Plaintiff can salvage those claims now. In support of this argument, Defendants rely upon two decisions regarding FELA: Flynn v. New York, N.H., & H.R. Co., 283 U.S. 53, 56 (1931), and Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70 (1913).

<u>Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.</u>, 337
F.3d 314, 322 (3d Cir. 2003); <u>Oneida</u>, 848 F.2d at 417 (providing
that "[i]t has been specifically held that a debtor must
disclose any litigation likely to arise in a non-bankruptcy
contest"). However, debtors are not required to list "every
'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset
disclosure form." <u>Freedom Med., Inc. v. Gillespie</u>, No. 06-3195,
2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting <u>Krystal
Cadillac</u>, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the
bankruptcy estate – which in a Chapter 7 case is controlled by
the trustee – "encompasses everything that the debtor owns upon
filing a petition, as well as any derivative rights, such as
property interests the estate acquires after the case
commences." <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000).
"While a bankruptcy case is pending, it is the trustee, and not
the debtor, who has the capacity to pursue the debtor's claims."
<u>In re Kane</u>, 628 F.3d at 637 (internal quotation marks and
citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §
554(d), a cause of action which a debtor fails to schedule,
remains property of the estate because it was not abandoned and
not administered." <u>Allston-Wilson v. Philadelphia Newspapers,
Inc.</u>, No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,
2006); <u>see also</u> <u>In re Kane</u>, 628 F.3d at 637 ("an asset must be

properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554") (quoting <u>Hutchins v. IRS</u>, 67 F.3d 40, 43 (3d Cir. 1995)).

Typically, the only interests that a bankruptcy estate owns are those that a plaintiff has at the time the petition is filed. <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000) (concluding that the bankruptcy "estate encompasses everything that the debtor owns upon filing a petition") (emphasis added); 11 U.S.C. § 541(a)(1). However, any new, post-petition interest (such as a legal claim) that is "sufficiently rooted in the pre-bankruptcy past" can also constitute part of the debtor's bankruptcy estate. <u>See</u> <u>Segal v. Rochelle</u>, 382 U.S. 375 (1966).

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." <u>Id.</u> (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate

all inconsistencies no matter how slight or inadvertent they may

be." Id. It "should only be applied to avoid a miscarriage of

justice" and "is only appropriate when the inconsistent

positions are tantamount to a knowing misrepresentation to or

even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324

(internal quotation marks and citations omitted). The "doctrine

of judicial estoppel does not apply 'when the prior position was

taken because of a good faith mistake rather than as part of a

scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362

(quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir.

1980)). "It is a fact-specific, equitable doctrine, applied at

courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir.

2010).

     The Third Circuit Court of Appeals has formulated this

test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent.
> Second, judicial estoppel is unwarranted unless the
> party changed his or her position "in bad faith –
> i.e., with intent to play fast and loose with the
> court." Finally, a district court may not employ
> judicial estoppel unless it is "tailored to address
> the harm identified" and no lesser sanction would
> adequately remedy the damage done by the litigant's
> misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.

Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.

2001)). The Third Circuit has further concluded that a

"rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at 416-18); Ryan Operations, 81 F.3d at 363. However, the application of this inference does not arise "from the mere fact of nondisclosure." Ryan Operations, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, inter alia, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. See id. at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

**V.   ANALYSIS**

   A.   Judicial Estoppel

        Defendants contend that, because the dismissal of Mr. Oswald's asbestos claims was merely administrative (such that the claims could be reinstated by Mr. Oswald or the MDL Court at some point in the future), the claims were assets whose omission

from Schedule B of the bankruptcy action constituted an
inconsistent position between the two lawsuits and creates an
inference of bad faith. Plaintiff contends (presumably
inadvertently misstating the chronology of events) that because
the claims were in a dismissed stage at the time of the
bankruptcy filing, they were not in essence assets and did not
need to be disclosed — and that, if they did constitute assets
that should have been disclosed, the failure to disclose them
was a good faith mistake.

>    i.   Step One: Has Plaintiff Taken Two Irreconcilably
>         Inconsistent Positions?

Mr. Oswald's duty of disclosure included identifying
pending lawsuits, lawsuits he intended to bring, and any
potential and likely lawsuits. See Krystal Cadillac-Oldsmobile,
337 F.3d at 322. It is undisputed that Mr. Oswald did not list
asbestos claims as assets in his initial bankruptcy filing.
Importantly, however, it is apparent from the Bankruptcy Court's
approval of Mr. Oswald's asbestos counsel (the Maritime
Asbestosis Legal Clinic) as special counsel to the bankruptcy
trustee prior to the first closure of the bankruptcy case that,
at some point prior to the closure of the bankruptcy case, Mr.
Oswald informed the bankruptcy trustee and court of his asbestos
claims. Therefore, although it is true both that Mr. Oswald
initially represented to the Bankruptcy Court that such an asset

did not exist, and that Plaintiff is now pursing those same claims, because Mr. Oswald informed the bankruptcy court of his asbestos claims at some point during the pendency of the bankruptcy case, the two positions are <u>not</u> irreconcilably inconsistent. <u>See</u> <u>id.</u> at 319-320.

   ii. <u>Step Two: Did Plaintiff Change His Position In Bad Faith</u>

  In light of the foregoing determination (i.e., that there was not necessarily a change in position on the part of Plaintiff in not identifying asbestos claims in the bankruptcy petition but pursuing those same claims now), the analysis on this issue is complete, and the Court need not reach the second step of the analysis (whether there was "bad faith" behind such a change).

  For the above reasons, Defendants' motion for summary judgment on grounds of judicial estoppel will be denied. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-50.

  B. <u>Real Party in Interest/Standing</u>

  Defendants next contend that, despite Mr. Oswald's failure to schedule the asbestos claims on his bankruptcy petition, the claims now belong to the bankruptcy trustee (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiff has no right to pursue them. They assert that, because Mr. Oswald did not properly schedule those claims as assets, the trustees were

incapable of passing those claims back to Mr. Oswald through abandonment of any remaining and unpursued assets as would normally happen pursuant to 11 U.S.C. § 554.  Here, the Defendants' position has some initial merit.  Even though Mr. Oswald did inform the bankruptcy trustee of his claims, he did not actually schedule those claims or amend his petition to include them.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, which is controlled by the trustee, "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), and that "it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." In re Kane, 628 F.3d at 637 (internal quotation marks and citations omitted). It is also true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action, which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Plaintiff erred by failing to schedule his administratively dismissed asbestos claims when he filed his bankruptcy petition. While the Court has held that

this error was not necessarily inconsistent with his later
lawsuit since he did tell the bankruptcy trustee about his
claims, these claims are nonetheless part of the bankruptcy
estate as they were not only potential claims, but were realized
claims technically held in abeyance by the Court, and thus
needed to be scheduled. Under these circumstances, the claims
remain part of the bankruptcy estate and the trustee remains the
real party in interest for such claims, even after the
bankruptcy was closed. See Killmeyer v. Oglebay Norton Co., 817
F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's
motion to substitute for the plaintiff as the real party in
interest since the debtor's unscheduled pre-petition claim could
only be administered by the trustee); Saellam v. Norfolk S.
Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6,
2007) (concluding that "[b]ecause Plaintiff's cause of action is
part of the bankruptcy estate, and has not been abandoned by the
trustee, I hold Plaintiff is not the real party in interest and
that only the trustee in bankruptcy, as sole representative of
Plaintiff's estate, has standing to pursue the instant
lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that
where it was undisputed that the plaintiffs cause of action
arose before her bankruptcy and that she failed to list the
claim on her bankruptcy schedule, only the trustee could pursue
the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410,

413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal of the case since the claim did not belong to the plaintiff and the trustee had not sought to intervene).

Having held that the trustee, and not Plaintiff, is the real party in interest of the instant asbestos claims, the Court must determine the appropriate remedy. Given that the claims belong to the estate and that, therefore, distributions of any recovery by the trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, the trustee shall be given the opportunity to decide, in the first instance, whether he/she will prosecute the claims.

The Court does not underestimate the practical difficulties involved. The bankruptcy case is now closed in the Bankruptcy Court for the Middle District of Florida, and the identity and whereabouts of the trustee are unknown to this Court. To expedite the process of putting the trustee on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of Plaintiff's bankruptcy case in the Bankruptcy Court for the Middle District of Florida (No. 8:96-bk-03917-ALP); (2) ascertain the identity of the trustee; and (3) serve a copy of said memorandum and order upon the trustee

at his/her last known address. The trustee will have sixty (60) days from the date of the filing of the order on the docket of the Bankruptcy Court to seek to reopen the Bankruptcy action and to advise this Court that he/she intends to either prosecute the instant asbestos claims or will provide notice in the bankruptcy action of his/her intention to abandon those claims.[6] In such event, the Court will stay the instant proceedings while the bankruptcy estate is reopened (providing monthly updates to the Court on the status of the petition to reopen).[7] Once the bankruptcy estate is reopened, the trustee will have thirty (30)

---

[6] This case is somewhat unique in that the trustee was aware of the unscheduled asbestos claims during the pendency of the bankruptcy proceeding. Thus, if it was the trustee's original intention to abandon those claims, the trustee, instead of moving to substitute him/herself as the party-plaintiff, may reopen the bankruptcy estate and give notice of the abandonment of the asbestos claims pursuant to Federal Rule of Bankruptcy Procedure 6007.

Regardless, the trustee will be ordered to provide a signed letter certifying his/her (a) filing of a petition with the Bankruptcy Court to reopen Plaintiff's bankruptcy proceedings and (b) intention to be substituted as party-plaintiff in the instant case or intention to abandon the claims in the bankruptcy action.

[7] Once the trustee has petitioned the Bankruptcy Court to reopen the bankruptcy proceedings, and until a motion for substitution as the party-plaintiff has been filed by the trustee or the trustee has served notice of the abandonment of the claims, he/she will be required to file a monthly status update with this Court (by the last day of each month), (a) informing the Court of the status of the petition to reopen the bankruptcy proceedings, and (b) certifying his/her continuing intention to pursue the asbestos claims in the instant case or abandon them in the bankruptcy action.

days from the date of the reopening of the estate to move this Court to substitute himself/herself as the party-plaintiff in this case or to serve notice of abandonment in the bankruptcy action.

In the event that (1) the trustee fails to advise this Court within sixty (60) days from the date the order is filed on the docket of the Bankruptcy Court that he/she intends to proceed with the instant claims or intends to abandon them,[8] (2) he/she declines to do so, (3) he/she fails to provide a monthly status update, or (4) he/she fails to move to be substituted as party-plaintiff or, alternatively, fails to give notice of

---

[8]     It is not clear whether the trustee's failure to respond to the Court's order would constitute an express or implied abandonment of the instant claims under 11 U.S.C. § 554. See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86 (D.D.C. 1991) (noting that the mere fact the trustee was notified of the pending lawsuit, but failed to administer it, would not necessarily mandate a finding of implied abandonment). Importantly, however, the party seeking to demonstrate abandonment bears the burden of persuasion. Hanover Ins. Co. v. Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir. 1974). In bankruptcy proceedings, the trustee's position is similar to that of a fiduciary to both the debtor and creditors. Under the bankruptcy code, the trustee must "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and reduce to money the property of the estate," 11 U.S.C. § 704(a)(1). Moreover, the trustee "has the duty to maximize the value of the estate," Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 353 (1985), and "in so doing is bound to be vigilant and attentive in advancing the estate's interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In sum, it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." Id. (citing 4 Collier, Bankruptcy ¶ 704.01 (15th ed.)).

abandonment of the claims within thirty (30) days of the
reopening of the bankruptcy action, the Court will give
Plaintiff an additional thirty (30) days[9] to provide this Court
with notice that he intends to petition the Bankruptcy Court for
the Middle District of Florida to reopen the bankruptcy
proceedings and move in that court to compel abandonment of the
instant claims. See 11 U.S.C. § 554(b).[10] If such notice is
timely provided to this Court, the Court will stay the instant
proceedings pending the disposition of Plaintiff's motion in the
Bankruptcy Court.

If notice is not received from either the trustee or
Plaintiff in the specified timeframe, the Court will dismiss
Plaintiff's case for failure to substitute the real party in
interest. See Fed. R. Civ. P. 17(a)(3) ("The court may not
dismiss an action for failure to prosecute in the name of the

---

[9]      This would be ninety (90) days from the date the
memorandum and order are filed on the Bankruptcy Court's docket
(for events pursuant to (1) or (2)); or thirty (30) days from
the date of the pertinent failure pursuant to (3) or (4).

[10]      Plaintiffs will be ordered to provide a signed letter
certifying their intention to petition the Bankruptcy Court to
reopen Plaintiff's bankruptcy proceedings and move the
Bankruptcy Court to compel abandonment of the instant claims.
For the reasons set forth in footnote 9 herein, the Bankruptcy
Court for the Middle District of Florida is the court in the
best position to provide the proper parties (including any
potential creditors) with sufficient notice of Plaintiff's
motion to compel abandonment of the instant claims. See 11
U.S.C. § 554(b).

real party in interest until, after an objection, a reasonable
time has been allowed for the real party in interest to ratify,
join, or be substituted."). At this time, however, and under
these circumstances, summary judgment in favor of Defendants on
grounds of the real party in interest/standing will be denied
without prejudice. <u>Anderson</u>, 477 U.S. at 248-50.

**VI.  CONCLUSION**

        For all of the reasons stated above, Defendants'
motion for summary judgment will be denied.